# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| RANDY R. MOORE, | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Civil Action: 3:24-cv-00603-S-BN |
| | § | |
| JPMORGAN CHASE, | § | |
| | § | |
| Defendant. | § | |

## <u>DEFENDANT'S APPENDIX IN SUPPORT OF ITS MOTION TO DISMISS</u>

***Document***                                                                                           ***Page(s)***

Retail Installment Contract ......................................................................................... 1-6

Documents referred to in Complaint............................................................................ 7-20

Respectfully submitted,

   */s/Aimee G. Szygenda*
Gregg D. Stevens, SBN: 19182500
gstevens@hinshawlaw.com
Aimee Szygenda, SBN: 24027054
aszygenda@hinshawlaw.com
HINSHAW CULBERTSON, LLP
1717 Main Street, Suite 3625
Dallas, Texas 75201
Telephone: 945-229-6377
Facsimile: 312-704-3001

***ATTORNEYS FOR DEFENDANT***
***JPMORGAN CHASE, MORE PROPERLY***
***IDENTIFIED AS JPMORGAN CHASE***
***BANK, N.A.***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 16, 2024, the foregoing document is being filed with the Clerk of Court via CM/ECF, notice of which was sent via electronic filing to the following:

Randy R. Moore
3618 Auriga Drive
Garland, TX 75044
rm8676dm@gmail.com

*/s/ Aimee G. Szygenda*
Aimee G. Szygenda

# EXHIBIT A

This copy was created by eOriginal SmartSign® Web on Oct 20, 2023 08:45:03 PM EDT.

Case 3:24-cv-00603-S-BN    Document 10    Filed 05/16/24    Page 4 of 22    PageID 47

# CARMAX®

## RETAIL INSTALLMENT CONTRACT

| Contract Number 931856230 | Contract Date 10/20/2023 |

| Seller | CarMax Auto Superstores, Inc. | 12715 L B J FREEWAY | GARLAND, TX 75041 |
| | Name | Address | Zip Code |
| Buyer | RANDY RIDEL MOORE | 3618 AURIGA DR | GARLAND, TX 75044 |
| | Name | Address | Zip Code |
| Co-Buyer | N/A | N/A | N/A |
| | Name | Address | Zip Code |

The Buyer is referred to as "you" or "your". The Seller is referred to as "we" or "us". This contract may be transferred by the Seller.

**Promise To Pay.** The credit price is shown below as the "Total Sale Price". The "Cash Price" is also shown below. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments according to the Payment Schedule in this contract. If more than one person signs as Buyer, you agree to keep all the promises in this contract even if the others do not.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of |
|---|---|---|---|---|
| 12.79 % | $ 23,119.33 e* | $ 51,950.75 | $ 75,070.08 | $ 0.00 $ 75,070.08 e* |

e means an estimate

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 1,042.64 | Monthly, beginning 12/04/2023 |

**Security.** We will have a security interest in the motor vehicle being purchased.
**Late Charge.** If we do not receive your entire payment within 15 days after it is due, you will pay a late charge of 5% of the scheduled payment.

**Prepayment.** If you pay early, you will not have to pay a penalty.
**Additional Information.** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.5. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____72_____ (in months)

WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE GAP CONTRACT. You can cancel the GAP contract without charge for a period of 30 days from the date of this contract, or for the period stated in the GAP contract, whichever period ends later.

I want the optional GAP contract.

Buyer Signs: _RANDY RIDEL MOORE_

**\*A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law.**

**\*Un cargo documental no es un cargo oficial. La ley no exige que se imponga un cargo documental. Pero éste podría cobrarse a los compradores por el manejo de la documentación en relación con la venta. Un cargo documental no puede exceder una cantidad razonable acordada por las partes. Esta notificación se exige por ley.**

Vehicle you are purchasing:
Year/Make/Model 2021 DODGE CHALLENGER
VIN 2C3CDZFJ8MH620459
New _____ Used ___X___
You have thoroughly inspected, accepted, and approved of the Vehicle in all respects.
Use for which purchased:
Personal, Family or Household ___X___
Business or Commercial _____ Agricultural _____

*Trade-In(s)*
Year/Make/Model N/A
VIN N/A
Year/Make/Model N/A
VIN N/A

### ITEMIZATION OF AMOUNT FINANCED

| A. CASH PRICE | | |
|---|---|---|
| 1. Cash Price of Vehicle | $ | 45,998.00 |
| 2. Cash Price of CarMax Accessories | $ | 0.00 |
| 3. Sales/Excise Tax | $ | 2,874.88 |
| 4. Other: N/A | $ | 0.00 |
| 5. Other: N/A | $ | 0.00 |
| 6. Total Cash Price [1 through 5] | $ | 48,872.88 |
| B. DOWNPAYMENT AND CREDITS | | |
| 1. Cash Downpayment | $ | 0.00 |
| 2. Manufacturer's Rebate | $ | 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | | |
| a. Value of "Trade-In" | $ | 0.00 |
| b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
| c. Pay-Off of "Trade-In" | $ | 0.00 |
| d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.6. below] | $ | 0.00 |
| 4. Other: N/A | $ | 0.00 |
| 5. Other: N/A | $ | 0.00 |
| 6. Total Downpayment [1 through 5] | $ | 0.00 |
| C. UNPAID BALANCE OF CASH PRICE [A.6. minus B.6.] | $ | 48,872.88 |
| D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF (Seller may keep part of these amounts.) | | |
| 1. Documentary Fee* | $ | 150.00 |
| 2. Dealer's Inventory Tax | $ | 94.62 |
| 3. To Public Officials or State | | |
| a. Government Certificate of Title Fee | $ | 33.00 |
| b. Government License and Registration Fees | $ | 56.50 |
| c. County Fees | $ | 11.50 |
| d. TX Temporary License Plate Fee | $ | 5.00 |
| e. TX Inspection Fees | $ | 8.25 |
| f. N/A | $ | 0.00 |
| g. N/A | $ | 0.00 |
| 4. To Fidelity Warranty Services, Inc. for Optional Extended Service Contract | $ | 1,799.00 |
| 5. Optional GAP Waiver Agreement (GAP Contract) | $ | 920.00 |
| 6. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 0.00 |
| 7. Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 6] | $ | 3,077.87 |
| E. AMOUNT FINANCED [C plus D.7.] | $ | 51,950.75 |

Taxes, title fee, license fee, and any state inspection fee will be paid by Seller to government agencies. Documentary fee and deputy service fee will be retained by Seller and the Seller may also retain parts of the insurance, service contracts, and other charges.

---

This contract has 5 pages, plus any optional GAP Waiver Agreement. This is page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _RRM_     Co-Buyer's Initials

RIC9043    2
Order #: 1554206
Rev. Date 08/20
10/20/2023 07:05 PM
DMS Tracking #: 5858927    Reprint #: 0
MIS ID: 7111002
Legal - GF



This copy was created by eOriginal SmartSign® Web on Oct 20, 2023 08:45:03 PM EDT.

# RETAIL INSTALLMENT CONTRACT

**YOUR REPRESENTATIONS.** You promise that you have given true and correct information in your credit application. You understand that in entering this contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.

**RETURNED PAYMENT CHARGE.** You will pay us a returned payment charge of $30 for each payment device that is not honored by your financial institution. The fee can be added to the amount you owe or collected separately.

**FINANCE CHARGES.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

**HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
(1) earned but unpaid finance charge; and
(2) to anything else you owe under this agreement.

**HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge and your last payment will be more than your final scheduled payment. If you make your scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase.

**INTEREST AFTER MATURITY.** If you do not pay all you owe when the final payment becomes due, or you do not pay all that you owe if we demand payment in full under this contract, you will pay an interest charge on the amount that is still unpaid. The amount owed will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this contract until paid in full.

**TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

**USE AND TRANSFER OF THE MOTOR VEHICLE.** You will not sell or transfer the motor vehicle without our written permission. If you do sell or transfer the motor vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00. You will promptly tell us in writing if you change your address or the address where you keep the motor vehicle. You will not remove the motor vehicle from Texas for more than 30 days unless you first get our written permission.

**CARE OF THE MOTOR VEHICLE.** You agree to keep the motor vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the motor vehicle. You will keep the motor vehicle in good repair. You will not allow the motor vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the motor vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the motor vehicle, we may pay the third party any cost required to free the motor vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the motor vehicle. If you do not pay this amount, we may repossess the motor vehicle and add that amount to the amount you owe. If we do not repossess the motor vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

**AGREEMENT TO KEEP MOTOR VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurer must be authorized to do business in Texas. The insurance must include collision coverage and either comprehensive or fire, theft, and combined additional coverage.

**OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE MOTOR VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the motor vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our file.

**PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the motor vehicle, unless we agree otherwise in writing. However, if the motor vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the motor vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the motor vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

**RETURNED OPTIONAL SERVICE AND GAP CONTRACT CHARGES.** If we get a refund on service or GAP contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

**SECURITY INTEREST.** To secure all you owe on this contract and all your promises in it, you give us a security interest in:
- The motor vehicle including all accessories and parts now or later attached, and any other goods financed in this contract;
- All insurance proceeds and other proceeds received for the motor vehicle;
- Any GAP, service contract or other contract financed by us and any proceeds of those contracts; and
- Any refunds of charges included in this contract for GAP or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the motor vehicle.

**DEFAULT.** You will be in default if:
- You do not pay any amount when it is due;
- You break any of your promises in this agreement;
- You allow a judgment to be entered against you or the collateral; or
- You file bankruptcy, bankruptcy is filed against you, or the motor vehicle becomes involved in a bankruptcy.

If you default, we can exercise our rights under this contract and our other rights under the law.

**OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

**REPOSSESSION.** If you default, we may repossess the motor vehicle from you if we do so peacefully. If any personal items are in the motor vehicle, we can store them for you and give you written notice at your last address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the motor vehicle.

**YOUR RIGHT TO REDEEM.** If we take your motor vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the motor vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the motor vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

**DISPOSITION OF THE MOTOR VEHICLE.** If you don't pay us to get the motor vehicle back, we can sell it or take other action allowed by law. We will send you notice at least 10 days before we sell it in a public or private sale. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the motor vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the motor vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

**COLLECTION COSTS:** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows.

**CANCELLATION OF OPTIONAL GAP AND SERVICE CONTRACTS:** This contract may contain charges for GAP or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the motor vehicle.

**LEGAL LIMITATIONS ON OUR RIGHTS:** If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**"TRADE-IN" AND DOWNPAYMENT.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this contract and that you have not borrowed it.

**COMMUNICATIONS.** You agree that we may monitor and record telephone calls regarding this contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers you provide in any manner and at any time.

**APPLICABLE LAW.** Federal and Texas law apply to this contract.

---

**This contract has 5 pages, plus any optional GAP Waiver Agreement. This is page 2. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials _____    Co-Buyer's Initials _____

This copy was created by eOriginal SmartSign® Web on Oct 20, 2023 08:45:03 PM EDT.

Case 3:24-cv-00603-S-BN    Document 10    Filed 05/10/24    Page 6 of 22    PageID 49



**RETAIL INSTALLMENT CONTRACT**
Other Important Agreements

# ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we", "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
- **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a.  What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b.  Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the Arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c.  Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d.  Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e.  Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f.  Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g.  Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h.  Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i.  Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j.  Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

**This contract has 5 pages, plus any optional GAP Waiver Agreement. This is page 3. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials ___MA___                Co-Buyer's Initials _____

RIC9043                                                                 MIS ID: 7111001
Rev. Date 08/20

This copy was created by eOriginal SmartSign® Web on Oct 20, 2023 08:45:03 PM EDT.

# RETAIL INSTALLMENT CONTRACT

Case 3:24-cv-00603-S-BN     Document 10     Filed 05/16/24     Page 7 of 22     PageID 50

**Other Important Agreements**

## NO LIABILITY INSURANCE INCLUDED

**THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

**PROPERTY INSURANCE: You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want or provide proof of insurance you already have. The insurer must be authorized to do business in Texas.** You agree to give us proof of property insurance. You must name us as the person to be paid in the event of damage or loss.

### YOUR INSURANCE INFORMATION

LIENHOLDER/LOSS-PAYEE JPMorgan Chase          INSURED'S NAME RANDY RIDEL MOORE

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00          COLLISION $ 500.00

INSURANCE COMPANY LIBERTY MUTUAL

POLICY NUMBER 456138514          EFFECTIVE DATE 10/20/2023          EXPIRATION DATE 04/20/2024

INSURANCE AGENT NAME AGENT          TELEPHONE NUMBER (800) 531-9941

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Agreement To Keep Vehicle Insured section on Page 2 of this contract.

### USED CAR BUYERS GUIDE

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### SELLER'S DISCLAIMER OF WARRANTIES

**UNLESS THE SELLER MAKES A WRITTEN WARRANTY, OR ENTERS INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT, THE SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, ON THE MOTOR VEHICLE, AND THERE WILL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE MOTOR VEHICLE THAT THE MOTOR VEHICLE MANUFACTURER MAY PROVIDE.**

This contract has 5 pages, plus any optional GAP Waiver Agreement. This is page 4. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _RM_          Co-Buyer's Initials _____

RIC9043
Rev. Date 08/20

5

This copy was created by eOriginal SmartSign® Web on Oct 20, 2023 08:45:03 PM EDT.

# RETAIL INSTALLMENT CONTRACT
### Other Important Agreements



---

### VEHICLE RETURN POLICY

You may return the vehicle to CarMax for a refund within 7 calendar days if the condition of the vehicle does not change. This policy only applies to used vehicles.

### ELECTRONIC DISCLOSURE

☒ If checked, you agree to use electronic records and electronic signatures to document this Contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this Contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local laws and regulations.

### OCCC NOTICE

For questions or complaints about this contract, contact  JPMorgan Chase _____ at
**(800) 223-5050** .

The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.

### INTEGRATION AND SEVERABILITY CLAUSE

This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

Any change to this contract must be in writing. Both you and we must sign it. No oral modifications to this contract are binding.

Buyer _KANDU RIDEL MOORE_ _____ Co-Buyer _____

---

**CONSUMER WARNING: Notice to the buyer—Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.**

---

**This contract has 5 pages, plus any optional GAP Waiver Agreement. This is page 5. By signing below you represent that you have read and agree to the terms on all pages of this contract, including the arbitration provision on page 3. You acknowledge receipt of a completed copy of this contract and confirm that before you signed it you were free to take it and review it.**

Seller  CarMax Auto Superstores, Inc. _____ Buyer's Signature  _KANDU RIDEL MOORE_ _____

By  _Salman Danawala_ _____ Co-Buyer's Signature _____

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

---

### ASSIGNMENT

Seller hereby sells, assigns and transfers to  JPMorgan Chase _____
(Assignee) this contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor _Salman Danawala_ _____

Date  10/20/2023 _____ Title  CarMax Associate _____

RIC9043
Rev. Date 08/20

MIS ID: 98000697

6

# EXHIBIT B

**UNITED STATES POSTAL SERVICE** | **PRIORITY MAIL EXPRESS®**

PRESS FIRMLY.   *Retail*



RDC 07

10017

**$28.75**

R2305H130476-01

EI 468 893 785 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE 44-412-24406

Randy Moore
3610 Primga Dr
Garland, TX 75044

TO: (PLEASE PRINT)

Chase Headquarters
383 Madison Ave
New York, NY 10017

SECURITY

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code 75044

Date Accepted (MM/DD/YY)  12/15/23

Scheduled Delivery Date (MM/DD/YY)  12/15/23

Time Accepted  17:18 PM

Weight  lbs  3.5 oz

Postage  $ 28.75

Total Postage & Fees  $ 28.75

**This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; May 2020; All rights reserved.**

9

OHI20231221CCC3400006

CHASE ◉ Auto

Auto Loan Payment Coupon

RANDY R MOORE

Account Number                    123293195562301
Due Date                          PAY ON DEMAND
Scheduled Payment Amount          $1,042.64
Total Payment Due                 $1,042.64

123293195562301 10104094 01042643

**Address or Phone Number changing?**
Changes can be made by signing into chase.com or calling customer service.

**Authorization to Convert Your Check to an Electronic Transfer Debit:**
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check. Your bank account may be debited as soon as the same day we receive your payment. You will not receive your check back from your institution.

Stay connected with the Chase Mobile® app to pay your bill from a Chase checking account, go paperless, or check your balance and due date. Get the app by texting "mobile" to 24273.

'Chase Mobile app is available for select mobile devices. Enroll in Chase Online℠ and download the Chase Mobile app. There is no charge from Chase but message and data rates may apply.

ALG1

Make checks payable to Chase Auto.
Write your account number on your check. Do not send cash.

Amount Enclosed $

One-Thousand fourty two and 64/100

CHASE AUTO FINANCE
PO BOX 78232
PHOENIX AZ 85062-8232

Accepted
For Deposit

1,042.64

Paid to Beaver

⑈0 3 29 3 1 9 5 5 6 2 3 0 1⑈ ⑆1 2 00 2 0 0 05⑆

-restriction endorsment -
By: Moore R Randy/agent
For: RANDY R MOORE/principal
(without recourse)

10

**11**

## Claim of Credit

I, Moore R Randy/agent on behalf of RANDY R MOORE/PRINCIPAL, hereby accept all titles, rights, interest, and equity owed to RANDY R MOORE/PRINCIPAL.

I hereby instruct CFO Jeremy Barnum to apply the principal balance to the principal account #12329319562301 for each and every billing cycle for set-off.

I also instruct CFO Jeremy Barnum to communicate in writing within 5 business days once instructions are completed.

If instructions are not completed, I instruct CFO Jeremy Barnum to respond in writing within 5 business days giving reason of non-performance of fiduciary duties.

If no communication is made within 5 business days, I, Moore R Randy/agent on behalf of RANDY R MOORE/PRINCIPAL can assume that instructions are completed.

12

OHI20231221CCC3400006

# STATUTORY DURABLE POWER OF ATTORNEY

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE DURABLE POWER OF ATTORNEY ACT, SUBTITLE P, TITLE 2, ESTATES CODE. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO. IF YOU WANT YOUR AGENT TO HAVE THE AUTHORITY TO SIGN HOME EQUITY LOAN DOCUMENTS ON YOUR BEHALF, THIS POWER OF ATTORNEY MUST BE SIGNED BY YOU AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY.

You should select someone you trust to serve as your agent. Unless you specify otherwise, generally the agent's authority will continue until:

1. you die or revoke the power of attorney;
2. your agent resigns, is removed by court order, or is unable to act for you; or
3. a guardian is appointed for your estate.

I, RANDY R MOORE, of 3618 Auriga Drive Garland, TX 75044, of Dallas County, appoint Moore R Randy as my agent to act for me in any lawful way with respect to all of the following powers that I have initialed below. (YOU MAY APPOINT CO-AGENTS. UNLESS YOU PROVIDE OTHERWISE, CO-AGENTS MAY ACT INDEPENDENTLY.)

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (O) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS LISTED IN (A) THROUGH (N).

TO GRANT A POWER, YOU MUST INITIAL THE LINE IN FRONT OF THE POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF THE POWER. YOU MAY, BUT DO NOT NEED TO, CROSS OUT EACH POWER WITHHELD.

_____ (A) Real property transactions;

_____ (B) Tangible personal property transactions;

_____ (C) Stock and bond transactions;

_____ (D) Commodity and option transactions;

_____ (E) Banking and other financial institution transactions;

1 of 8

14

OHI20231221CCC3400006

_____ (F) Business operating transactions;

_____ (G) Insurance and annuity transactions;

_____ (H) Estate, trust, and other beneficiary transactions;

_____ (I) Claims and litigation;

_____ (J) Personal and family maintenance;

_____ (K) Benefits from social security, Medicare, Medicaid, or other governmental programs or civil or military service;

_____ (L) Retirement plan transactions;

_____ (M) Tax matters;

_____ (N) Digital assets and the content of an electronic communication;

___*RM*___ (O) ALL OF THE POWERS LISTED IN (A) THROUGH (N). YOU DO NOT HAVE TO INITIAL THE LINE IN FRONT OF ANY OTHER POWER IF YOU INITIAL LINE (O).

## SPECIAL INSTRUCTIONS

Special instructions applicable to agent compensation *(initial in front of one of the following sentences to have it apply; if no selection is made, each agent will be entitled to compensation that is reasonable under the circumstances):*

___*RM*___ My agent is entitled to reimbursement of reasonable expenses incurred on my behalf and to compensation that is reasonable under the circumstances.

_____ My agent is entitled to reimbursement of reasonable expenses incurred on my behalf but shall receive no compensation for serving as my agent.

Special instructions applicable to co-agents (if you have appointed co-agents to act, initial in front of one of the following sentences to have it apply; if no selection is made, each agent will be entitled to act independently):

_____ Each of my co-agents may act independently for me.

_____ My co-agents may act for me only if the co-agents act jointly.

_____ My co-agents may act for me only if a majority of the co-agents act jointly.

Special instructions applicable to gifts *(initial in front of the following sentence to have it apply):*

_____ I grant my agent the power to apply my property to make gifts outright to or for the benefit of a person, including by the exercise of a presently exercisable general power of appointment held by me, except that the amount of a gift to an individual may not exceed the amount of annual

2 of 8

17

OHI20231221CCC3400006

exclusions allowed from the federal gift tax for the calendar year of the gift.

_____
_____
_____
_____

UNLESS YOU DIRECT OTHERWISE BELOW, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT TERMINATES. CHOOSE ONE OF THE FOLLOWING ALTERNATIVES BY CROSSING OUT THE ALTERNATIVE NOT CHOSEN:

    A. This power of attorney is not affected by my subsequent disability or incapacity.
    B. This power of attorney becomes effective upon my disability or incapacity.

YOU SHOULD CHOOSE ALTERNATIVE (A) IF THIS POWER OF ATTORNEY IS TO BECOME EFFECTIVE ON THE DATE IT IS EXECUTED.

IF NEITHER (A) NOR (B) IS CROSSED OUT, IT WILL BE ASSUMED THAT YOU CHOSE ALTERNATIVE (A).

If Alternative (B) is chosen and a definition of my disability or incapacity is not contained in this power of attorney, I shall be considered disabled or incapacitated for purposes of this power of attorney if a physician certifies in writing at a date later than the date this power of attorney is executed that, based on the physician's medical examination of me, I am mentally incapable of managing my financial affairs. I authorize the physician who examines me for this purpose to disclose my physical or mental condition to another person for purposes of this power of attorney. A third party who accepts this power of attorney is fully protected from any action taken under this power of attorney that is based on the determination made by a physician of my disability or incapacity.

I agree that any third party who receives a copy of this document may act under it. Termination of this durable power of attorney is not effective as to a third party until the third party has actual knowledge of the termination. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney. The meaning and effect of this durable power of attorney is determined by Texas law.

If any agent named by me dies, becomes incapacitated, resigns, refuses to act, or is removed by court order, or if my marriage to an agent named by me is dissolved by a court decree of divorce or annulment or is declared void by a court (unless I provided in this document that the dissolution or declaration does not terminate the agent's authority to act under this power of attorney), I name the following (each to act alone and successively, in the order named) as successor(s) to that agent:

_____.

3 of 8

**19**

OHI20231221CCC3400006

Signed this \_\_16\_\_ day of \_\_OCTOBER\_\_, \_2023\_


(your signature)

State of \_\_Texas\_\_

County of \_\_Dallas\_\_

This document was acknowledged before me on \_10|16|23\_ (date)

RANDY R MOORE
(name of principal)

_____
(signature of notarial officer)

(Seal, if any, of notary)

\_\_Ashtin V. Burleson\_\_
(printed name)

My commission expires: \_3|11|2024\_

> **ASHTIN V BURLESON**
> Notary Public
> STATE OF TEXAS
> My Comm. Exp. 03-11-24
> Notary ID # 13240026-7